IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,378

In the Matter of LANCE M. HALEY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed March 2, 2018. One-year suspension.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Lance M. Haley*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Lance M. Haley, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1991.

On January 9, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on February 15, 2017. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on May 24, 2017, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.3 (2017 Kan. S. Ct. R. 290) (diligence), 3.2 (2017 Kan. S. Ct. R. 341) (expediting litigation), 5.5(a) (2017 Kan. S. Ct. R. 361) (unauthorized practice of law), 8.4(d) (2017 Kan. S. Ct. R. 379) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"11.     In 1990, the Missouri Supreme Court admitted the respondent to the practice of law in the state courts of Missouri. The Kansas Supreme Court admitted the respondent to the practice of law in the state courts of Kansas on October 4, 1991. The respondent was also licensed to practice law in the United States Court of Appeals for the Eighth Circuit, the United States District Court for the Western District of Missouri, and the United States District Court for the District of Kansas.

"12.     In 2006, the respondent was appointed to represent F.M. and R.L.A. in criminal appeals pending in the United States Court of Appeals for the Eighth Circuit. The respondent failed to prosecute the two federal criminal appeals. The Eighth Circuit Court issued an order for the respondent to appear and show cause why he should not be disciplined for failing to prosecute the two federal criminal appeals. The respondent failed to respond to the order to appear and show cause. On November 8, 2006, the Eighth Circuit Court directed that the respondent's name be stricken from the [roll] of attorneys admitted to practice before the Eighth Circuit Court. (The respondent's licenses to practice before the United States District Court for the Western District of Missouri and the United States District Court for the District of Kansas were also suspended.)

"13.     On January 17, 2007, the federal court amended its order of disbarment to direct that the respondent's license be suspended for a minimum of one year. The court directed that any application for reinstatement be accompanied by a written opinion from a mental health provider that the respondent was able to effectively discharge his professional responsibilities.

"14.     Following the federal court discipline, on January 30, 2007, in a reciprocal case, the Missouri Supreme Court issued an order suspending the respondent's license to practice law in Missouri, for having violated Missouri Rules of Professional Conduct 1.3, 3.2, and 8.4(d). The Missouri Supreme Court directed that no application for reinstatement would be entertained until the respondent was reinstated to practice in the federal courts.

"15.     The respondent failed to comply with the annual requirements to maintain his Kansas law license. As a result, on October 9, 2007, the Kansas Supreme Court issued an order suspending the respondent's license to practice law in the state courts of Kansas.

"16.     On April 18, 2008, the Eighth Circuit Court terminated the suspension order. However, the respondent did not resume the practice of law at that time.

"17.     In 2009, the respondent filed an application for reinstatement in Missouri. Prior to the time the court ruled on the respondent's application, in June 2012, the respondent withdrew his application for reinstatement in Missouri.

"18.     On May 3, 2013, the respondent informed the disciplinary administrator of the suspensions of his federal license and his Missouri license. The respondent indicated in the correspondence that he had not been practicing law, but was beginning the process of reinstatement. Even though the respondent was not subject to a disciplinary suspension in Kansas, a reinstatement questionnaire was provided to the respondent in order to obtain information regarding what the respondent had been doing since he last practiced law in Kansas.

"19.     Prior to the respondent's May 3, 2013, letter, the disciplinary administrator had not been made aware by the respondent or the other licensing authorities that the respondent had engaged in professional misconduct and his other licenses to practice law had been suspended. At that time, the disciplinary administrator considered the respondent's correspondence as a self-report of the misconduct which occurred in the Eighth Circuit Court of Appeals.

3

"20.     In a letter dated June 17, 2013, to the disciplinary administrator the respondent disclosed that he engaged in the unauthorized practice of law by drafting a codicil to his mother's will. There is no evidence that the codicil was anything other than his mother's intent, however, the codicil did benefit the respondent by shielding his future inheritance from an outstanding tax obligation he had at that time. Further, the respondent's family members understood the purpose of the document. However, later, the codicil was nullified in a Johnson County, Kansas, probate proceeding.

"21.     On July 29, 2013, the respondent returned the completed reinstatement questionnaire to the disciplinary administrator.

"22.     On August 19, 2013, the respondent informed the disciplinary administrator that he wished to withdraw his request for reinstatement of his Kansas license. (As an aside, the respondent had not taken the steps necessary to request reinstatement of his license to practice law in Kansas. In order to seek reinstatement, the respondent had to complete continuing legal education hours, submit certain forms, and pay fees.)

"23.     Because the respondent had not been disciplined on a reciprocal basis in Kansas for the professional misconduct that occurred in the federal courts, the disciplinary administrator proceeded with the investigation and continued to correspond with the respondent.

"24.     In December, 2013, the respondent filed a second application for reinstatement in Missouri.

"25.     On March 10, 2015, in a pleading filed with the Missouri Supreme Court, Missouri bar counsel recommended that the respondent's request for reinstatement be granted:

4

'1.     The reinstatement report was mailed to Applicant on February 19, 2015. Applicant responded in a letter received by OCDC on March 5, 2015, stating he has no objection to the report. His application is, then ready for decision by the Court.

'2.     Applicant has satisfied the minimum requirements set forth in Rule 5.28. He obtained a passing score on the MPRE within the timeframe set forth in the rule. The Missouri Bar Director of Continuing Legal Education programs confirmed Applicant has reported the requisite CLE credits. He has paid the reinstatement fee and owes no disciplinary costs.

'3.     The Court's January 30, 2007, order requires that no application for reinstatement will be considered by the Court until Applicant is reinstated to practice in the United States Court of Appeals for the Eighth Circuit, which is the court from which the disciplinary case originated. The suspension of Applicant's privilege to practice in that court was terminated by the Eighth Circuit's order, issued in April [of] 2008. While the Eighth Circuit's suspension was terminated by that court, Applicant is not eligible for readmission to the Eighth Circuit until he is admitted to, among other options, the highest court of a state. See Federal Rules of Appellate Procedure Rule 46(a). (FN Aside from admission to a state bar, an attorney is eligible for admission to the bar of a court of appeals if the attorney is admitted to practice before the U.S. Supreme Court, another court of appeals, or a U.S. District Court.) Thus, while Applicant's federal suspension is terminated, he must be readmitted to a state court bar before he is eligible to apply for readmission to the federal court. Under these unique circumstances, the fact that Applicant is not reinstated to practice before the Eighth Circuit should not be an insurmountable impediment to his reinstatement to Missouri's Bar.

'4.     Applicant's mental health was an issue addressed in the Eighth Circuit's order of discipline. He was required to, and did, supply that court with a written report from a treating psychiatrist attesting to his ability to discharge his professional obligations. Applicant has been forthcoming about his mental health struggles in the course of staff counsel's investigation in the instant reinstatement case. At OCDC's request, Applicant provided letters from his psychiatrist and treating psychologist attesting to his ability to discharge his professional responsibilities and the stability of his emotional and psychological state.

'5.     Applicant's first application for reinstatement was withdrawn by him in large part because he was not compliant with federal and state tax laws. He is currently compliant.

'6.     Applicant has established a long-term non-controversial work history in the years since his 2006 suspension by the federal court. He states that he has maintained proficiency in his preferred area of practice, federal criminal defense work, by attending CLEs and connections with former colleagues. He professes eagerness to return to that area of practice in the federal district court in western Missouri.'

"26.     On April 30, 2015, the Missouri Supreme Court granted the respondent's application and reinstated his law license. The court, however, placed the respondent on probation for two years. The Missouri bar counsel informed the disciplinary administrator that the respondent's license to practice law in Missouri had been reinstated, subject to two years['] probation.

"27.     In order to rectify the administrative issues related to his Kansas license, the respondent must comply with certain administrative requirements.

a.     At the time of the hearing, the respondent needed to complete 120 hours of continuing legal education, with 20 of those hours classified as ethics hours. Now, because another registration period has

6

passed, the respondent must complete 132 hours of continuing legal education, including 22 hours of ethics. Further, the respondent must pay a fee of $220 to the Kansas Continuing Legal Education Commission. At the time of the hearing, the respondent had completed 55.5 hours. The respondent has now completed 127.5 hours, including 21 hours of ethics.

       b.      The respondent must also make a written request to the Kansas Supreme Court for reinstatement, complete the application for reinstatement form and provide associated documentation, and complete the 2017-2018 annual attorney registration form. At the time of the hearing, the respondent owed $765 to the Clerk of the Supreme Court. Since that time, again, the registration period has passed, so the respondent now owes a total of $830 to the Clerk of the Supreme Court.

"28.     On May 23, 2017, the respondent entered into a voluntary monitoring agreement with the Kansas Lawyers' Assistance Program.

"*Conclusions of Law*

"29.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 3.2, KRPC 5.5, and KRPC 8.4, as detailed below.

"KRPC 1.3 and KRPC 3.2

"30.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. Further, if an attorney fails to make reasonable efforts to expedite litigation consistent with the interests of his client, the attorney violated KRPC 3.2. In this case, the respondent failed to diligently and promptly represent F.M. and R.L.A. in their appeals before the Eight[h] Circuit Court of Appeals. Because the respondent failed to act with reasonable diligence and promptness and failed to expedite the litigation consistent with the interests of his clients, the hearing panel concludes that the respondent violated KRPC 1.3 and KRPC 3.2.

7

## "KRPC 5.5

"31.    KRPC 5.5(a) prohibits the unauthorized practice of law. After the Kansas Supreme Court administratively suspended the respondent's license to practice law for failing to comply with the annual requirements to maintain a license, the respondent drafted a codicil for his mother. Drafting the codicil constituted the practice of law. As such, the hearing panel concludes that the respondent violated KRPC 5.5(a).

## "KRPC 8.4

"32.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . [and] engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(d) and (g). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to properly prosecute the federal criminal appeals. The respondent engaged in conduct that adversely reflected on the respondent's fitness to practice law when he drafted a codicil for his mother when his license to practice law was suspended. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d) and (g).

## "*American Bar Association Standards for Imposing Lawyer Sanctions*

"33.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"34.    *Duty Violated*. The respondent violated his duty to his clients to provide diligent representation. The respondent also violated his duty to the legal profession.

8

"35.    *Mental State*. The respondent knowingly violated his duties.

"36.    *Injury*. As a result of the respondent's misconduct, the respondent caused potential injury to his clients.

"37.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factor present:

    a.    Substantial Experience in the Practice of Law. The
    Kansas Supreme Court admitted the respondent to practice law in the
    State of Kansas in 1991. At the time of the misconduct, the respondent
    had been practicing law for more than 25 years.

"38.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

    a.    Absence of a Prior Disciplinary Record. While the
    respondent has previously been disciplined in Missouri and the Eighth
    Circuit Court of Appeals, the underlying misconduct is the same as the
    underlying misconduct in this case. Thus, prior to the misconduct in the
    federal appeals, the respondent had not previously been disciplined.

    b.    Absence of a Dishonest or Selfish Motive. The
    respondent's misconduct does not appear to have been motivated by
    dishonesty or selfishness.

9

c.      Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent underwent unimaginable trauma as a child. As a result, the respondent suffers from post-traumatic stress disorder. Additionally, the respondent suffers from bipolar disorder. It is clear that the respondent's mental health conditions contributed to his misconduct.

d.      The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

e.      Imposition of Other Penalties or Sanctions. The respondent has experienced other sanctions for his conduct. The respondent was suspended by the Eighth Circuit Court of Appeals and the Missouri Supreme Court.

f.      Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"39.      In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards:

'4.42      Suspension is generally appropriate when:

(a)      a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)      a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

10

'4.43     Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

'7.2      Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'7.3      Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"40.     The disciplinary administrator recommended that the respondent be suspended for a period of one year. The disciplinary administrator further recommended that the respondent's request for probation be granted and that he be allowed to again practice law in Kansas after he satisfies the administrative requirements to maintain a license to practice law. The disciplinary administrator recommended that the term of probation be two years. Finally, the disciplinary administrator suggested that additional conditions be added to the respondent's probation.

"41.     The respondent recommended that he be placed on probation. The respondent agreed to the additional terms outlined by the disciplinary administrator as well as the term of 2 years.

"42.     When a respondent requests probation, the hearing panel must first consider whether the respondent has satisfied the requirements of Rule 211(g)(3). That subsection provides:

11

'(3)     The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)     the misconduct can be corrected by probation; and

(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

In this case, the respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel well in advance of the hearing on the formal complaint. The respondent put the proposed plan of probation into effect prior to the hearing and complied with each of the terms and conditions of the probation plan. The misconduct, in this case can be corrected by probation. Finally, placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"43.     Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license be suspended for a period of one year. The hearing panel further recommends that

12

the suspension be suspended and that the respondent be placed on probation for a period of two years, made retroactive to the date of the hearing, May 24, 2017. However, the hearing panel also recommends that the respondent remain on probation until specifically discharged by order of the Kansas Supreme Court. The hearing panel further recommends that the respondent's probation be made subject to the following terms and conditions:

      a.      *No Unauthorized Practice of Law*. The respondent must not engage in the unauthorized practice of law. The respondent understands he is unable to practice law in Kansas until the Kansas Supreme Court enters an order of reinstatement. The respondent understands that the court will not enter an order of reinstatement until the respondent satisfies his obligations with the Kansas continuing legal education commission and the Clerk of the Supreme Court.

      b.      *Compliance with the KALAP Monitoring Agreement*. The respondent must comply with the KALAP monitoring agreement.

      c.      *Missouri Probation*. The respondent will continue to comply with all terms and conditions of the Missouri probation. The respondent will notify the disciplinary administrator, the practice supervisor, and KALAP if any action is taken on the respondent's Missouri probation.

      d.      *Kansas Suspension.* The respondent will notify the disciplinary administrator, the practice supervisor, and KALAP if the Kansas Supreme Court reinstates the respondent's license to practice law in Kansas.

      e.      *Inventory of Cases and Clients.* After the respondent's license to practice law in Kansas is reinstated, the respondent must maintain an inventory of all open cases and clients. The respondent must update the inventory on a daily basis. The inventory must include the

13

client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

f.     *Practice Supervision.* Brian Leininger has agreed to serve as the respondent's practice supervisor. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor will be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities. The respondent and the practice supervisor will meet monthly. Prior to the respondent's reinstatement, the practice supervisor will verify on a monthly basis that the respondent is not engaged in the unauthorized practice of law. After the respondent's license to practice in Kansas is reinstated, the respondent must provide the practice supervisor with an updated copy of the inventory of cases and clients on a monthly basis. The respondent must allow the practice supervisor access to his client files, calendar, and trust account records. The respondent must comply with any requests made by the practice supervisor.

g.     *Quarterly Reports.* The practice supervisor will prepare and forward quarterly reports to the respondent and the disciplinary administrator regarding the respondent's status on probation. The reports will include the following:

(1)     any change of address;
(2)     any arrests of the respondent;
(3)     any criminal charges brought against the respondent;
(4)     any civil lawsuit filed against the respondent;
(5)     any civil judgment entered against the respondent;
(6)     a description of any disputes with clients;
(7)     a statement identifying issues the respondent encountered and the practice supervisor's recommended remedial measures;

14

(8)    a statement as to whether the respondent has complied with the Kansas Rules of Professional Conduct and all conditions of probation since the previous report was submitted; and

(9)    any concern the practice supervisor has regarding the respondent's honesty, trustworthiness, or fitness to practice law.

h.    *Client Communication*. The respondent must contact each client by letter at least once every three months regarding the status of the matter.

i.    *Audits*. Within thirty (30) days of the date of this report, the practice supervisor will conduct an initial audit of the respondent's files. Thereafter, every six months, the practice supervisor will conduct additional audits. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor will include such information in his report. The practice supervisor will provide the Disciplinary Administrator and the respondent with a copy of each audit report. The respondent must follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

j.    *Psychological Treatment*. The respondent must continue his treatment for post-traumatic stress disorder and bipolar disorder throughout the period of supervised probation, unless the treatment provider determines that continued treatment is no longer necessary. The treatment provider will notify the practice supervisor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the treatment provider during the probationary period. The respondent must provide the treatment provider with an appropriate release of information to allow the treatment provider to share such information [with] the practice supervisor and the disciplinary administrator.

15

k. *Continued Cooperation.* The respondent must continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent must timely provide such information.

l. *Change of Address or Employment.* The respondent will notify the disciplinary administrator, practice supervisor, and KALAP [of] any change of address or employment within 10 days.

m. *Additional Violations.* The respondent must not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent must immediately report such violation to the practice supervisor and the disciplinary administrator. The disciplinary administrator will take immediate action directing the respondent to show cause why the probation should not be revoked.

"44. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2017 Kan. S. Ct. R. 251). Clear

16

and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearings before the panel and this court for which he appeared. The respondent did not file exceptions to the panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2017 Kan. S. Ct. R. 255). Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.3 (2017 Kan. S. Ct. R. 290) (diligence), 3.2 (2017 Kan. S. Ct. R. 341) (expediting litigation), 5.5(a) (2017 Kan. S. Ct. R. 361) (unauthorized practice of law), 8.4(d) (2017 Kan. S. Ct. R. 379) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the office of the Disciplinary Administrator recommended a one-year suspension from the practice of law, that respondent's request for probation be granted, that respondent be allowed to practice law in Kansas after he satisfies the administrative requirements to maintain a license to practice law, and that the term of probation be two years. The respondent recommended a two-year probation. The panel recommended a one-year suspension, that the suspension be suspended and respondent be placed on probation retroactive to the hearing date of May 24, 2017, for a period of two years and until specifically discharged by Kansas Supreme Court order, and that the terms and conditions in the final hearing report paragraph 43 be met.

17

At the hearing before this court, the attorney for the office of the Disciplinary Administrator recommended a one-year suspension, that the suspension be suspended, and respondent be placed on probation for two years *following* the date that respondent satisfies the administrative requirements to maintain a license to practice law in Kansas. Similarly, the respondent did not object to this recommendation and assured this court that he would satisfy those administrative requirements and emerge from his administrative suspension by no later than May 31, 2018.

In light of respondent's continuing administrative suspension and the uncertainty concerning when, precisely, that administrative suspension might be lifted, we are unable to precisely follow the unanimous recommended disposition of this matter. We are, however, in agreement that the recommendation is substantively appropriate. Therefore, we conclude the appropriate discipline in this matter is as follows: (1) a one-year disciplinary suspension from the practice of law; and (2) should respondent obtain relief from the administrative suspension by satisfying the administrative requirements to maintain a license to practice law in Kansas, he may petition this court for an order to suspend the disciplinary suspension and the imposition of a two-year probation period consistent with the probation plan previously approved by the Disciplinary Administrator and continuing until specifically discharged by this court pursuant to Supreme Court Rule 211(g)(7) (2017 Kan. S. Ct. R. 251).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Lance M. Haley be and he is hereby disciplined by a one-year suspension from the practice of law in accordance with Supreme Court Rule 203(a)(2) (2017 Kan. S. Ct. R. 234), effective on the filing of this decision.

IT IS FURTHER ORDERED that respondent is granted permission, once no longer administratively suspended, to petition this court for an order to suspend the one-year disciplinary suspension and the imposition of a two-year probation period consistent with the probation plan previously approved by the Disciplinary Administrator and continuing until specifically discharged by this court pursuant to Supreme Court Rule 211(g)(7).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.